IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| DR. SAEED MAHMOODIAN, <br><br>                    *Plaintiff,* <br><br> v. <br><br> MANSOUREH PIRNIA, ET AL., <br><br>                    *Defendants.* | CASE NO. 3:11-cv-00005 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

This matter is before the Court on Defendants' motion to set aside their default, which the Clerk of the Court entered at my direction on September 30, 2011.[1] Naturally, Plaintiff opposes Defendants' motion. For the reasons that follow, I will deny Defendants' motion.

I. BACKGROUND

Before resolving Defendants' motion, I will briefly restate the case's procedural history. On January 27, 2011, Dr. Saeed Mahmoodian ("Plaintiff") filed a complaint in which he alleges, *inter alia*, copyright infringement and false advertising by Mansoureh Pirnia, Daryoush Pirnia, and Mehr Iran Publishing Company, Ltd. (collectively "Defendants"). Plaintiff amended his

---

[1] To date, Defendants have not retained counsel, and no attorney has entered an appearance on their behalf. Thus, Defendants are ostensibly proceeding *pro se*. Indeed, they represented themselves at the hearing I conducted on March 5, 2012. However, I note that the motion at hand appears to have been prepared in large part, if not exclusively, by Cyrus Zal, an attorney who purports to be in good standing and admitted to the bar of California, and who previously represented Defendants in their settlement negotiations with Plaintiff. By his own admission, Mr. Zal is not admitted to practice before this Court and is not admitted to the Virginia State Bar. In a declaration attached to Defendants' motion, Mr. Zal correctly acknowledges that he is prohibited from filing any pleadings on Defendants' behalf in this Court. However, it is clear to me that Mr. Zal has effectively skirted this prohibition by ghostwriting Defendants' motion. Therefore, in resolving the instant motion, I will not afford Defendants the liberal construction to which *pro se* litigants are otherwise typically entitled. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

complaint on April 25, 2011, and served it on Defendants on May 5, 2011. At this point, according to the parties, some degree of settlement negotiation commenced. On June 14, 2011, I granted the parties' stipulation, thereby extending the time for Defendants to respond to Plaintiff's amended complaint to July 12, 2011. Settlement discussions evidently continued intermittently throughout July and part of August. However, by September 7, 2011, Defendants had still not responded to Plaintiff's complaint or retained counsel. On that date, Plaintiff filed a motion for entry of default and default judgment.

On September 30, 2011, I issued a memorandum opinion and an order directing the Clerk of the Court to enter Defendants' default. Additionally, I instructed the parties to schedule a hearing on Plaintiff's motion for default judgment for the purpose of determining the amount of damages that Plaintiff should be awarded, if any. On March 5, 2012, I conducted that hearing, at which time both sides were afforded an opportunity to present evidence and articulate their respective positions with respect to default judgment. Rather than elucidating the issues in this case, however, the hearing only further muddied the waters. Consequently, I ordered the parties to engage in a round of supplemental briefing, which concluded on April 26, 2012. One week later, on May 3, 2012, Defendants' filed the instant motion in which they request an order setting aside their default.

## II. LEGAL STANDARD

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . , the clerk must enter the party's default." Fed. R. Civ. P. 55(a). However, for good cause shown, a court may set aside an entry of default. Fed. R. Civ. P. 55(c). Thus, the decision whether to set aside an entry of default lies within the district court's

2

discretion. *See Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 251 (4th Cir. 1967).

When ruling on a motion to set aside an entry of default, "a district court should consider whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic." *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204–05 (4th Cir. 2006) (citations omitted). Any doubt on the part of the district court should be resolved in favor of setting aside an entry of default. *See Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969); *see also Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010) ("We have repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits.").

### III. DISCUSSION

In assessing Defendants' motion, I must determine whether "good cause" exists to set aside the entry of default so that the case may be heard on the merits. Fed. R. Civ. P. 55(c). I discuss the aforementioned "good cause" factors in turn.

#### A. Merits of Defendants' Defense

Generally, a meritorious defense requires "a proffer of evidence which would permit a finding for the defaulting party or which would establish a valid counterclaim." *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 811–12 (4th Cir. 1988) (citations omitted). Defendants contend that they have meritorious defenses, but rather than spelling them out, they simply refer the Court to the response brief that they submitted following

3

the default judgment hearing that I conducted on March 5, 2012.

In that brief, Defendants first argue that they could not have violated Plaintiff's copyright when they published their book in 2009 because Plaintiff did not register his copyright until December 28, 2010. In other words, in asserting their defense to the first three counts of Plaintiff's amended complaint alleging copyright infringement, Defendants contend that when their book was published, Plaintiff's copyright did not exist. However, this contention is inaccurate as a matter of law. It is well-established that "[c]opyright in a work created on or after January 1, 1978, subsists from its creation and, except [as otherwise provided], endures for a term consisting of the life of the author and 70 years after the author's death." 17 U.S.C. § 302(a). Thus, Defendants are incorrect that Plaintiff's copyright did not exist until the date on which he registered it, for the copyright existed at the moment Plaintiff created his works, which he alleges was before the publication of Defendants' book.[2] In this respect, then, Defendants' have not proffered sufficient evidence to demonstrate a meritorious defense to Plaintiff's claims for copyright infringement.

Plaintiff's other major allegation concerns false advertising under the Lanham Act, 15 U.S.C. § 1051 *et seq*. Again, Defendants seem to confuse the law in this regard. They argue that Plaintiff cannot recover under the Lanham Act because the Act only concerns trademarks, and thus has no applicability to a copyright case such as the instant matter. While it is true that *most* of the Lanham Act addresses trademarks and other related marks, § 43(a) of the Act "is one of the few provisions that goes beyond trademark protection." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29 (2003). Section 43(a) of the Lanham Act prohibits actions that

---

[2] It is worth noting that while a copyright in a creative work exists from the moment of that work's creation, "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made . . . ." 17 U.S.C. § 411(a).

"deceive consumers and impair a producer's goodwill." *Id.* at 32.[3] Thus, Defendants' purported defense that the Lanham Act is inapplicable in this case because it only addresses the infringement of marks is unavailing.

In a related yet distinct line of reasoning, Defendants argue that Plaintiff cannot recover any damages under the Lanham Act because a claim for recovery of profits and damages under 15 U.S.C. § 1111 requires the registration of a trademark. However, as Plaintiff correctly points out, remedies for false advertising flowing from violations of 15 U.S.C. § 1125 are governed by 15 U.S.C. § 1117, and not by 15 U.S.C. § 1111. Significantly, § 1117, unlike § 1111, does not restrict the availability of damages to suits involving infringement of a registered mark. Ultimately, then, Defendants' defenses are lacking in merit. As such, they cannot serve as a legitimate reason for setting aside the entry of default.[4]

---

[3] Towards that end, § 43(a) subjects to civil liability:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>>
>> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.

15 U.S.C. § 1125(a).

[4] Defendants also devote space in their brief arguing that Plaintiff cannot prevail on the state law claims brought in his amended complaint. However, I need not review Defendants' arguments in this regard, for the relief sought by Plaintiff is tied exclusively to his federal law claims. Indeed, throughout the course of this litigation, and since the hearing that I conducted on March 5, 2012, Plaintiff appears to have effectively dropped his state law claims.

## B. Reasonable Promptness

"When analyzing 'good cause,' a district court also considers the party's responsibility for the default, including whether the party took reasonably prompt action." *Vick v. Wong*, 263 F.R.D. 325, 330 (E.D. Va. 2009). This inquiry is conducted "in light of the facts and circumstances of each occasion," with considerable deference being afforded to the trial court's discretion. *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982).

Because Defendants waited over seven months from the entry of default to file their motion to have it set aside, and in light of their participation in the default judgment hearing that I conducted on March 5, 2012, they cannot seriously maintain that they were prompt and diligent in seeking the relief that they now desire. While Defendants' delay is not so great as to require dismissal of their motion as a matter of law as Plaintiff would have it, *see Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 952–54 (4th Cir. 1987) (permitting a case to be heard on the merits despite the fact that the moving party waited ten months before filing its motion to set aside default), this factor nevertheless clearly weighs against setting aside the entry of default.

## C. Personal Responsibility of Defendants

As a general matter, a defendant is responsible for its own failure to defend a lawsuit. *See Shelton v. Inn at Trivium*, No. 6:08cv00040, 2009 WL 792311, at *1 (W.D. Va. Mar. 25, 2009). "While a party should not ordinarily be punished for the conduct of its counsel, when the party itself is at fault, it 'must adequately defend its conduct to show excusable neglect.'" *Id.* (quoting *Augusta Fiberglass*, 843 F.2d at 811). Because Defendants have elected to proceed *pro se* in this matter, responsibility for their default must be ascribed to them.

Defendants argue that the entry of default was not a result of any "culpable conduct" on their part. Specifically, Defendants contend that they did not timely file an answer to Plaintiff's

6

complaint because the parties were in the process of settlement negotiations up until Plaintiff's filing of his motion for entry of default and default judgment on September 7, 2011. This point has been raised multiple times in various declarations submitted to the Court by Cyrus Zal, a California attorney who has represented Defendants (and appears to still be working with them in some capacity) and who I discussed in note 1, *supra*. Defendants maintain that their delay in responding to the complaint was based on extensions granted by Plaintiff so that the settlement talks could continue. Further, Defendants assert that when Plaintiff filed his motion for entry of default and default judgment, there was an outstanding request for another extension of time to file a response to Plaintiff.

However, Plaintiff disputes these contentions. According to Plaintiff, settlement negotiations ceased on August 10, 2011, the date on which he extended his final settlement offer, which was rejected by Defendants on August 25, 2011. Plaintiff further contends that the last extension for filing a responsive pleading that he granted to Defendants expired on August 24, 2011. Thus, according to Plaintiff, he waited an additional two weeks after the expiration of this deadline to file his motion for entry of default and default judgment on September 7, 2011.

"[S]ome courts have held that a good faith belief that an action will settle constitutes a reasonable basis for failing to interpose an answer." *Todtman, Nachamie, Spizz & Johns, P.C. v. Ashraf*, 241 F.R.D. 451, 454–55 (S.D.N.Y. 2007) (citations and internal quotations marks omitted). However, the *Ashraf* court also observed that "[p]arties appearing *pro se* should be given some leeway in meeting procedural rules due to their lack of legal knowledge, but a reasonable non-lawyer should have realized that *some* sort of response to the summons and complaint was necessary." *Id.* at 454. In the instant matter, after Defendants were served with Plaintiff's amended complaint, Defendants secured an extension to file their answer, which was

due by July 12, 2011. However, by September 7, 2011, no answer had been filed, and Plaintiff moved for entry of default and default judgment at that time. Notwithstanding the participation of Mr. Zal at various points throughout this litigation, the precise extent of which is unclear, Defendants have been and still are technically proceeding *pro see*. Therefore, they must be held personally responsible for both their failure to file a responsive pleading and their decision to wait over seven months to file the instant motion. Accordingly, this factor also militates against setting aside Defendants' default.

### D. Prejudice to Plaintiff

"In the context of a motion to set aside an entry of default . . . delay in and of itself does not constitute prejudice to the opposing party." *Colleton*, 616 F.3d at 418; *see also Stephenson v. El-Batrawi*, 524 F.3d 907, 915 (8th Cir. 2008) ("[D]elay alone, or the fact the defaulting party would be permitted to defend on the merits, are insufficient grounds to establish the requisite prejudice to the plaintiff."). In order to determine if the non-defaulting party was prejudiced,

> courts examine whether the delay: [1] made it impossible for the non-defaulting party to present some of its evidence; [2] made it more difficult for the non-defaulting party to proceed with trial; [3] hampered the non-defaulting party's ability to complete discovery; and [4] was used by the defaulting party to collude or commit a fraud.

*Burton v. The TJX Cos., Inc.*, No. 3:07-CV-760, 2008 WL 1944033, at *4 (E.D. Va. May 1, 2008) (citing *Lolatchy*, 816 F.2d at 952–53). The first two of these factors are weighted most heavily. *Id.*

Plaintiff has not demonstrated that he has been hindered in presenting some of his evidence or proceeding to trial. Similarly, Plaintiff has not shown that his ability to conduct discovery has been inhibited by Defendants' delay. Finally, there has been no contention that Defendants have delayed at any stage of this litigation as a means of colluding or committing

8

Case 3:11-cv-00005-NKM   Document 46   Filed 06/04/12   Page 8 of 10   Pageid#: 562

fraud. While "it is possible that Plaintiff would be prejudiced by having to shoulder the continuing costs of litigation if this default is set aside, that is an inconvenience not rising to the level of prejudice." *Vick*, 263 F.R.D. at 331 (citing *Carbon Fuel Co. v. USX Corp.*, No. 97-1995, 1998 WL 480809, at *4 (4th Cir. Aug. 6, 1998)).

Ultimately, while the delay here is substantial, it cannot be said that it is sufficiently long to cause Plaintiff prejudice as a matter of law. Setting aside the entry of default, while unequivocally inconvenient to Plaintiff, would not prejudice his case. *See Colleton*, 616 F.3d at 419 ("[N]o cognizable prejudice inheres in requiring a plaintiff *to prove* a defendant's liability, a burden every plaintiff assumes in every civil action filed in every federal court."). Accordingly, this factor weighs in favor of setting aside the entry of default.

### E. History of Dilatory Action

When deciding whether to set aside an entry of default, a district court should also consider whether there is a history of dilatory action by the party in default. *See Payne*, 439 F.3d at 204. In this case, there is no question that Defendants have a history of dilatory action, though one could debate the degree to which they are blameworthy if one accepts their contention that they relied on the fact that settlement discussions were ongoing. Generally, though, the case has been marked by Defendants' delays and requests for extensions, and of course, Defendants waited more than seven months after the clerk entered their default to file the motion presently before me. Therefore, this criterion weighs against setting aside the entry of default.

### F. Availability of Alternative Sanctions

Finally, "[a] district court should consider whether there are any sanctions less dramatic than a default that are both available and effective." *Vick*, 263 F.R.D. at 331 (citation omitted). "The most common alternative sanction, assessing attorney's fees on the tardy attorney, is not

9

Case 3:11-cv-00005-NKM   Document 46   Filed 06/04/12   Page 9 of 10   Pageid#: 563

possible here, as [Defendants have] no attorney who can be blamed for the delay and against whom sanctions could be assessed." *Id.* While I could impose Plaintiff's costs and fees on Defendants, the question arises as to whether such monetary sanctions would be effective in light of the fact that Defendants are not presently suffering from a lack of monetary incentive to defend this case. *See id.* Indeed, thus far, that incentive has not caused Defendants to timely defend the action or retain counsel to represent them. Ultimately, I find that this factor points slightly towards denying Defendants' motion.

## IV. CONCLUSION

Ultimately, despite the fact that one of the factors—the availability of alternative sanctions—does not strongly militate in favor of or against setting aside default, and the fact that one of the other criteria—prejudice to Plaintiff—counsels in favor of setting aside the entry of default, after having conducted the preceding inquiries, I conclude that the balance of the factors set out in *Payne*, when applied to the case at hand, indicate that there is not good cause to set aside the default. Accordingly, for the reasons stated herein, I will deny Defendants' motion to set aside the entry of default. An appropriate order accompanies this memorandum opinion, and a memorandum opinion and order will be forthcoming with respect to Plaintiff's outstanding motion for default judgment.

The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order to Defendants and to all counsel of record.

Entered this __4th__ day of June, 2012.

*/s/ Norman K. Moon*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE