IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| DR. SAEED MAHMOODIAN,<br><br>                *Plaintiff,*<br><br>v.<br><br>MANSOUREH PIRNIA, ET AL.,<br><br>                *Defendants.* | CASE NO. 3:11-cv-00005<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on Plaintiff's outstanding motion for default judgment, which is opposed by Defendants. For the reasons that follow, I will grant Plaintiff's motion and issue an order granting him default judgment against Defendants.

I. BACKGROUND

A. Facts as Alleged in the Amended Complaint

This case arises out the publication of a book by Mansoureh Pirnia, Daryoush Pirnia, and Mehr Iran Publishing Company, Ltd. (collectively "Defendants"). Dr. Saeed Mahmoodian ("Plaintiff") contends that in publishing the book, Defendants infringed his copyright and violated other laws aimed at protecting intellectual property. The factual allegations of the amended complaint are as follows.

On December 28, 2010, Plaintiff registered certain historical pieces with the United States Copyright Office under the title "Historical Works of Dr. Saeed Mahmoodian." Plaintiff contends that in or about 2010, Ms. Pirnia and Mr. Pirnia authored, and Mehr Iran published, a book entitled "Kayhan, From Nada to the Milky Way." The book contains the following passage

on page 26:

> Family tree of Mesbah clearly shows that all Molla Hosaynis of Evaz including Mesbah and Mohammadian are direct descendents of the Messenger of God. In this family tree there is no name of women in the family and the information is more about the men, but one woman in the family has the fame and she is Fatima of Sedeh that after the death of her husband she became "kalantar," sheriff of the Sedeh, a city of the State of Isfahan. She had four daughters, one was Roqiya who was the grandmother of Nasser Khan Qashaqa'i, and the other was the maternal grandmother of Molla Abdullah Yazdani, who became the cousin of Molla Abd-al-Rahman Mesbah-al-Diwan.

Am. Compl. ¶ 5, at 2–3.[1]  Additionally, on pages 21 and 23, the book contains illustrations of family trees, both of which include "artistic elements, arrangements, and calligraphy." Am. Compl. ¶¶ 19, 33, at 4, 6.  According to Plaintiff, the exact text above and the two illustrations of the family trees come from the historical works that he produced and for which he registered the aforementioned copyright.  Further, Plaintiff contends that Defendants, who he claims are competitors of his in the business of selling historical writings, included these aspects of his work without permission or attribution.  Plaintiff asserts that Defendants deliberately infringed his copyright through this conduct and by continuing to sell and distribute copies of the book in the United States and elsewhere.  In so doing, Defendants have allegedly diluted the distinctive quality of Plaintiff's writings in the marketplace.

Plaintiff asserts three counts of copyright infringement in violation of the Federal Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, and one count of false advertising in violation of the Lanham Act (Trademark Act of 1946), 15 U.S.C. § 1051 *et seq.*[2]  As forms of relief, Plaintiff

---

[1] The book itself, which Defendants submitted as an exhibit during the default judgment hearing on March 5, 2012, is entirely in Farsi.  The foregoing passage is a translation of the text on page 26 taken from Plaintiff's amended complaint.  Defendants have not disputed the accuracy of this translation.

[2] It should be pointed out that Plaintiff also alleges one count of false advertising in violation of Virginia law and one count of common law unfair competition.  Not only are these claims essentially duplicative of Plaintiff's federal law claims, but, more importantly, Plaintiff does not seek any specific relief pursuant to them.  In other words, the relief Plaintiff desires—namely, damages, attorney's fees, disgorgement of profits, and various forms of injunctive relief—are remedies he seeks under his Copyright Act and Lanham Act claims.  Indeed, in his supplemental reply brief submitted to the Court following the hearing on March 5, 2012, Plaintiff readily admits that < *continued . . .* >

requests:

1. Statutory damages in the amount of $90,000, plus interest, pursuant to the Copyright Act;

2. Disgorgement of Defendants' profits, estimated to be at least $100,000, pursuant to the Lanham Act;

3. Trebling of all damages pursuant to the Lanham Act;

4. Attorney's fees, expenses, and costs incurred pursuant to the Lanham Act;

5. Destruction of "all products, fixtures, writings, signage, art work, and other material which infringe Plaintiff's rights, falsely designate source or origin, or otherwise facilitate Defendants' unfair competition with Plaintiff";

6. An injunction permanently enjoining Defendants from using Plaintiff's copyrights; and

7. An injunction permanently enjoining Defendants from making false or defamatory comments about Plaintiff or his family.

*See* Am. Compl. ¶ A–G, at 10–11. I assess Plaintiff's entitlement to these forms of relief in Part III, *infra*.

### B. Procedural History

In light of the circuitous path this litigation has followed, a brief restatement of the procedural history to date is in order. After originally filing his complaint on January 27, 2011, Plaintiff filed an amended complaint on April 25, 2011, and served it on Defendants on May 5, 2011. At this point, according to the parties, some degree of settlement negotiation commenced. On June 14, 2011, I granted the parties' stipulation, thereby extending the time for Defendants to respond to Plaintiff's amended complaint to July 12, 2011. Settlement discussions evidently continued intermittently throughout July and part of August. However, by September 7, 2011, Defendants had still not responded to Plaintiff's complaint or retained counsel. On that date, Plaintiff filed a motion for entry of default and default judgment.

On September 30, 2011, I issued a memorandum opinion and an order directing the Clerk

---

< *continued . . .* > he has not sought any relief for his state law claims because of the relief he seeks pursuant to federal law. Therefore, I decline to analyze these vaguely pled state law claims at this juncture.

of the Court to enter Defendants' default. However, I denied Plaintiff motion for default judgment, and instead instructed the parties to schedule a hearing for the purpose of determining the amount of damages that Plaintiff should be awarded, if any. On March 5, 2012, I conducted that hearing, at which time both sides were afforded an opportunity to present evidence and articulate their respective positions with respect to default judgment. Rather than elucidating the issues in this case, however, the hearing only further muddied the waters. Consequently, I ordered the parties to engage in a round of supplemental briefing, which concluded on April 26, 2012. After denying Defendants' motion to set aside the entry of default on June 4, 2012, Plaintiff's motion for default judgment is finally ready to be resolved.

## II. LEGAL STANDARD

"Rule 55 of the Federal Rules of Civil Procedure authorizes the entry of a default judgment when a defendant fails 'to plead or otherwise defend' in accordance with the Rules." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982). The Clerk of the Court's interlocutory "entry of default" pursuant to Federal Rule of Civil Procedure 55(a) provides notice to the defaulting party prior to the entry of default judgment by the court. *Carbon Fuel Co. v. USX Corp.*, No. 97-1995, 1998 WL 480809, at *2 (4th Cir. Aug. 6, 1998). After the entry of default, the non-defaulting party may move the court for "default judgment" under Federal Rule of Civil Procedure 55(b). *Id.*[3]

Under Rule 55(b)(1), "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been

---

[3] Plaintiff has not technically renewed his motion for entry of default judgment since I denied his original motion for such on September 30, 2011. Therefore, I will construe Plaintiff's appearance at the default judgment hearing that I conducted on March 5, 2012, as an oral motion to renew its request for entry of default judgment against Defendants. I will further address this procedural anomaly in the order that accompanies this memorandum opinion.

defaulted for not appearing . . . ." Fed. R. Civ. P. 55(b)(1). However, when, as here, the sum is not certain, default can only be made by the Court. Fed. R. Civ. P. 55(b)(2); *Agri-Supply Co. v. Agrisupply.com*, 457 F. Supp. 2d 660, 662 (E.D. Va. 2006).

Upon default, the plaintiff's factual allegations are accepted as true for all purposes, *excluding* the determination of damages. *See Ryan v. Homecomings Fin. Network,* 253 F.3d 778, 780 (4th Cir. 2001) (citations omitted); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). Although the clear policy of the Federal Rules of Civil Procedure is to encourage dispositions of claims on their merits, the entry of default judgment is committed to the discretion of the trial court. *See Moradi*, 673 F.2d at 727 (citing *Reizakis v. Loy*, 490 F.2d 1132, 1135 (4th Cir. 1974)). In reviewing motions for default judgment, courts have referred to the following factors:

> (1) whether there is a large amount of money involved in the litigation; (2) whether there are material issues of fact in the case needing resolution; (3) whether the case involves issues of great public importance; (4) whether the grounds for the motion for a default judgment are highly technical; (5) whether the party asking for a default judgment has been prejudiced by the non-moving party's actions or omissions; (6) whether the actions or omissions giving rise to the motion for a default judgment are the result of a good-faith mistake on the part of the non-moving party; (7) whether the actions or omissions giving rise to the motion for a default judgment are the result of excusable neglect on the part of the non-moving party; and (8) whether the grounds offered for the entry of a default judgment are clearly established.

*Faulknier v. Heritage Fin. Corp.*, 1991 U.S. Dist. LEXIS 15748, at *11–12 (W.D. Va. May 20, 1991) (citing 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure §§ 2684–85 (1990)).

### III. DISCUSSION

As I have previously described at various junctures during the course of this litigation, and most recently in the memorandum opinion and order denying Defendants' motion to set aside the entry of default,[4] Defendants, notwithstanding their *pro se* status, have been dilatory, disregarded deadlines, failed to obtain counsel despite assertions that they would do so, and declined to file a pleading responsive to Plaintiff's amended complaint. There can be no serious doubt that Defendants' failure to defend this action has not resulted from excusable neglect or any good-faith mistake. Although the amount of money involved in this litigation is not insubstantial, it is not so large as to be remarkable. The grounds for default judgment here are not highly technical, and the instant matter, although presumably of great importance to Plaintiff, does not present issues of "great public importance." Given all of these factors, entry of default judgment in Plaintiff's favor is warranted. However, what is less clear is the relief to which Plaintiff is entitled. Accordingly, I proceed to an analysis of the various forms of relief sought by Plaintiff.

**A. Damages**

1. <u>Statutory Damages under the Copyright Act</u>[5]

Under the Copyright Act, a plaintiff has at his disposal a panoply of remedies against an infringer of his work, "including an injunction to restrain the infringer from violating his rights, the impoundment and destruction of all reproductions of his work made in violation of his rights,

---

[4] I note that Defendants waited over seven months from the date on which the Clerk of the Court entered their default to file their motion to have that entry of default set aside.

[5] In the supplemental reply brief he submitted to the Court following the hearing on March 5, 2012, Plaintiff, for the first time, disclaims any request for statutory damages. Instead, Plaintiff asserts that he is only seeking recovery of Defendants' profits. However, in the prayer for relief section at the end of his amended complaint, Plaintiff explicitly seeks damages, "statutory or otherwise." Am. Comp. ¶ A, at 10. For that reason, I analyze Plaintiff's entitlement to statutory damages under the Copyright Act, notwithstanding his more recent contention that he is not seeking such damages. My discussion of Plaintiff's entitlement to recovery of Defendants' profits is discussed in Part III.A.3, *infra*.

a recovery of his actual damages and any additional profits realized by the infringer or a recovery of statutory damages, and attorneys fees." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 434 (1984) (citing 17 U.S.C. §§ 502–505).  Thus, with respect to damages, a copyright infringer is liable for either (1) the copyright owner's actual damages and any additional profits of the infringer, or (2) statutory damages, but not both.  17 U.S.C. § 504(a).

The statutory damages provision of the Copyright Act permits an award for so-called ordinary infringement.  It allows a court to impose damages of not less than $750 or more than $30,000 "as the court considers just."  17 U.S.C. § 504(c)(1).  Additionally, the Copyright Act permits an award of statutory damages for willful infringement:

> In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000.  In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200.

17 U.S.C. § 504(c)(2).  As a whole, the statutory damages provisions of the Copyright Act reflect Congress's intent to deter offenders.  *See Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 442 (4th Cir. 2011).  However, not every holder of a copyright is eligible to seek statutory damages.  *See Bouchat v. Bon-Ton Dep't Stores, Inc.*, 506 F.3d 315, 329 (4th Cir. 2007).  The Copyright Act provides that "no award of statutory damages or of attorney's fees . . . shall be made for (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration."  17 U.S.C. § 412.  "By making registration a precondition for the 'extraordinary remed[y]' of statutory damages, Congress sought to motivate speedy registration."  *Bon-Ton*, 506 F.3d at 329 (citation omitted).

As previously mentioned, Plaintiff states in his complaint that he registered his works on December 28, 2010, and he alleges that Defendants published the Kayhan book in 2010.

7

However, at the hearing on March 5, 2012, Ms. Pirnia testified that she first published the book in 2008 or 2009. Upon my review of the evidence that Defendants submitted to the Court at the hearing, I agree with Ms. Pirnia and find that the book was published before 2010. First, I observe that while almost the entire second page of the Kayhan book is in Farsi, the single line of English text states: "Copy © Library of Congress 2008." Second, the certificate of registration of the Kayhan book's copyright, which was issued by the United States Copyright Office, states that its effective date is May 16, 2009. Of course, the mere fact that the registered copyright for the Kayhan book predates the registration that Plaintiff obtained for his historical works does not necessarily mean that Defendants could not have infringed Plaintiff's copyright, for it is well-established that copyright in a work subsists from the moment of its creation. *See* 17 U.S.C. § 302(a). However, because Defendants published the Kayhan book in 2008 or 2009, the copyright infringement alleged by Plaintiff plainly took place before Plaintiff registered his copyright.[6] Correspondingly, 17 U.S.C § 412 bars Plaintiff from recovering statutory damages and attorney's fees under the Copyright Act.[7] Accordingly, I find that Plaintiff is not entitled to the $90,000 he seeks in statutory damages for copyright infringement.

---

[6] In the affidavit he attaches to his supplemental reply brief, Plaintiff attests that in 2007, he registered a copyright for his work "Encyclopedia Larestanica." An exhibit also attached to his reply brief reveals that the copyright for this work was indeed registered with the United States Copyright Office and assigned a registration number in March 2007. According to the affidavit, portions of the Encyclopedia Larestanica were included in the historical works for which Plaintiff registered his copyright in December 2010 under the title "Historical Works of Dr. Saeed Mahmoodian." As the amended complaint makes clear, and as Plaintiff's affidavit corroborates, it is the Historical Works of Dr. Saeed Mahmoodian that is at issue in this case and which Defendants infringed, not the Encyclopedia Larestanica. Therefore, although there may have been some overlap of information or text from these two distinct, registered works, it is the registration date of the former, not the latter, that is relevant for the purpose of determining Plaintiff's eligibility for statutory damages under the Copyright Act.

[7] Briefly, I note that Plaintiff is similarly barred from recovering damages for any infringement that may have occurred *after* December 28, 2010, the date on which he registered the copyright in his historical works. *See, e.g.*, *Cassetica Software, Inc. v. Computer Sci. Corp.*, No. 09 C 0003, 2009 WL 1703015, at *2 (N.D. Ill. June 18, 2009) ("Even when the plaintiff attempts to limit its claim of infringement to events that occurred after registration, § 412 prevents the recovery of statutory damages when the infringement commenced before registration of the copyright and continued after registration.").

## 2. Disgorgement of Profits under the Lanham Act

Plaintiff also brings claims against Defendants for dilution and false advertising in violation of the Lanham Act. Congress passed the Lanham Act to make "actionable the deceptive and misleading use of marks," and "to protect persons engaged in . . . commerce against unfair competition." 15 U.S.C. § 1127. While most of the Lanham Act thus addresses trademarks and other related marks, § 43(a) of the Act "is one of the few provisions that goes beyond trademark protection." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29 (2003). That section subjects to civil liability:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> >
> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.

15 U.S.C. § 1125(a). At bottom, § 43(a) of the Lanham Act prohibits actions that "deceive consumers and impair a producer's goodwill." *Dastar*, 539 U.S. at 32.

Plaintiff alleges that Defendants, "in unlawfully and willfully copying Plaintiff's writing, created a likelihood of confusion among the public as to the original source of Plaintiff's writing and have contributed to the dilution of the distinctive quality of Plaintiff's writings in the marketplace." Am. Compl. ¶ 47, at 7. Thus, Plaintiff arguably asserts a claim under § 43(a)(1)(A), which addresses consumer confusion. However, the opinion of the Supreme Court of the United States in *Dastar* clearly forecloses Plaintiff's ability to maintain this claim. In *Dastar*, the Court interpreted the phrase "origin . . . of . . . goods" in subsection (A). 539 U.S.

at 37.  "[R]eading the phrase 'origin of goods' in the Lanham Act in accordance with the Act's common-law foundations (which were *not* designed to protect originality or creativity), and in light of the copyright and patent laws (which *were*)," the Court concluded that "the phrase refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id.*  Thus, to the extent that Defendants' publication of the Kayhan book produced any confusion among purchasers about the author of ideas or representations contained within the book, § 43(a)(1)(A) is not an available avenue for obtaining relief.

That being said, the bulk of Plaintiff's false advertising claim under the Lanham Act appears to focus not on consumer confusion over the origin of the Kayhan book, but rather on Defendants' alleged misrepresentations in the course of advertising the book's availability for purchase, which is covered by § 43(a)(1)(B) of the Lanham Act.  In order to state a claim under § 43(a)(1)(B), a plaintiff must allege that:

> "(1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products."

*Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 272 (4th Cir. 2002) (quoting *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 310–11 (1st Cir. 2002)).

Plaintiff alleges that "Defendants have made a statement of fact in commercial advertising" that Ms. Pirnia is the sole author of the book.  Am. Comp. ¶ 49, at 7.  According to Plaintiff, this statement is false because some of the content of the book—namely, portions of three different pages out of several hundred—was written by Plaintiff.  Moreover, Plaintiff

claims that this false statement is material because it is likely to influence the purchasing decisions of book consumers, though Plaintiff is silent with respect to how or why purchasers would be so persuaded. And according to Plaintiff, because the book has been distributed, the false statement has been placed in interstate commerce. Finally, Plaintiff asserts that he has been injured as a result of the false statement, "either by direct diversion of sales from himself to the defendant or by a lessening of goodwill associated with his writings." Am. Compl. ¶ 53, at 8. Plaintiff does not, however, provide any quantitative evidence or even anecdotal examples to substantiate this assertion.

Clearly, Plaintiff's false advertising claim under § 43(a)(1)(B) is tenuous. In his amended complaint, Plaintiff has plainly done nothing more than track—in some instances verbatim—the aforementioned elements of a false advertising claim under the Lanham Act as delineated by the United States Court of Appeals for the Fourth Circuit in *Scotts*. Additionally, Plaintiff has failed to allege any facts supporting the third prong of the inquiry: whether the false statement actually deceives (or has the tendency to deceive) a substantial segment of its audience. Indeed, Plaintiff is silent with respect to what comprises that audience or even its size. *See Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 299 F. Supp. 2d 565, 573 (E.D. Va. 2004) ("Both the level of dissemination required to constitute commercial advertising or promotion and the size of the relevant purchasing public will vary from industry to industry and from case to case. Whether such misrepresentations actually qualify as advertising or promotion depends on the number of alleged contacts or misrepresentations made in relation to the total market.").

Then again, it is not surprising that Plaintiff has failed to allege how the presumably small consumer audience to whom Defendants marketed the Kayhan book has been deceived, for it is practically impossible to imagine how they could have been misled simply by virtue of the

11

fact that Ms. Pirnia, who published the book, claims to be the sole author. Perhaps even more fundamentally, it is difficult to understand the logic behind Plaintiff's claim, which seems to be that because Ms. Pirnia, whether purposefully or accidentally, included aspects of historical works put together by Plaintiff on three different pages of her book, she necessarily made a false or misleading representation of fact when she placed her name on the book to denote her sole authorship, notwithstanding the fact that she wrote or compiled the remainder of the work.

What is clear is that Plaintiff's Lanham Act cause of action, when boiled down, is nothing more than a claim for plagiarism. And yet the Supreme Court has rejected the notion that § 43(a) of the Lanham Act can be utilized to sue for plagiarism. *See Dastar*, 539 U.S. at 36 ("[R]eading § 43(a) of the Lanham Act as creating a cause of action for, in effect, plagiarism . . . would be hard to reconcile with our previous decisions."); *see also* Margit Livingston, *Inspiration or Imitation: Copyright Protection for Stage Directions*, 50 B.C. L. REV. 427, 473 (2009) (Since the *Dastar* decision in 2003, federal courts have fallen into line behind the notion that the Lanham Act cannot be used in plagiarism cases."). Because Plaintiff has no valid claim under the Lanham Act, he is not entitled to disgorgement of profits pursuant to it.[8]

---

[8] Even if Plaintiff could state a claim against Defendants under the Lanham Act for false advertising, I would still deny him disgorgement of Defendants' profits, if there be any, from their sale of the book (under Defendants' accounting, publication and sale of the book actually resulted in a net loss of over $16,000.00). According to the United States Court of Appeals for the Fourth Circuit, a district court should consult the following equitable factors when deciding whether to order disgorgement of a defendant's profits for false advertising under the Lanham Act: "'(1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, [and] (5) the public interest in making the misconduct unprofitable . . . .'" *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 175 (4th Cir. 2006) (quoting *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 439 (5th Cir. 2002) (internal quotation marks omitted)). In the instant matter, I find no evidence that Defendants intended to confuse or deceive consumers or prospective purchasers of the book. Similarly, there is no evidence that Defendants' action caused sales to be diverted from Plaintiff. Indeed, despite Plaintiff's unsubstantiated claim that he is a direct competitor, there is no allegation that publication of the Kayhan book resulted in a diversion of sales of his own works. Analysis of these factors, which only highlight the inadequacy of Plaintiff's attempt to bring a claim under the Lanham Act, demonstrate that disgorgement of profits would be an inequitable remedy in this case.

### 3. Disgorgement of Profits under the Copyright Act

In the prayer for relief section at the end of his amended complaint, Plaintiff requests $90,000 in damages, "statutory or otherwise." Am. Comp. ¶ A, at 10. However, there are absolutely no allegations elsewhere in the amended complaint that Plaintiff has suffered actual damages as a result of Defendants' infringement. Thus, it seems that at least in his amended complaint, Plaintiff in fact sought only statutory damages, his lack of entitlement to which I have already explained in Part III.A.1, *supra*. But in both the supplemental brief and reply brief that Plaintiff filed subsequent to the damages hearing on March 5, 2012, he argues that he is entitled to recover Defendants' profits under the Copyright Act as well. Because Plaintiff did not request recovery of such profits in his amended complaint, and in light of the fact that he did not argue his entitlement to such profits under the Copyright Act at the hearing, it would be within my right to treat this claim as waived. Nevertheless, I will briefly address its merits.

In lieu of statutory damages, a plaintiff can recover "actual damages and any additional profits of the infringer." 17 U.S.C. § 504(a)(1). However, profits of the infringer are only recoverable if they can be attributed to the infringement itself. *Id.* § 504(b). Thus, § 504(b) effectively imposes a causation requirement whereby a copyright owner can only recover an infringer's profits if there is a direct causal link between the infringement and the profits. In *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522–23 (4th Cir. 2003), the Fourth Circuit ruled that summary judgment in favor of a defendant could properly be granted with respect to a plaintiff's claim for recovery of profits if "either (1) there exists no conceivable connection between the infringement and [the defendant's] revenues; or (2) despite the existence of a conceivable connection, [the plaintiff] offered only speculation as to the existence of a causal link between the infringement and the revenues." In the instant matter, Plaintiff has failed to demonstrate that there is a conceivable connection between Defendants' infringement and the

13

profits they derived from selling the Kayhan book. First, whether Defendants even made a profit is debatable in light of their accounting of the revenues and expenses associated with the book's publication. But more importantly, even if Defendants did make a profit, Plaintiff has not shown how that profit can possibly be attributed to Defendants' inclusion of his copyrighted works on three pages of the over three-hundred-page book. Further, even if I were to assume, for the purposes of argument, that there is a conceivable connection, Plaintiff has not offered, let alone speculated to, a plausible causal link between the infringement and the supposed profits. Putting aside the fact that Plaintiff did not plead facts to support his claim to recover Defendants' profits, and ignoring Plaintiff's omission of such a claim from his prayer for relief, I nonetheless find that Plaintiff has failed to show that Defendants' profits are attributable to their infringement. Accordingly, Plaintiff is not entitled to recover Defendants' profits under the Copyright Act.

### B. Attorney's Fees

Plaintiff seeks an award of attorney's fees incurred pursuant to the Lanham Act. However, because Plaintiff has clearly failed to state a claim under the Lanham Act, he is not entitled to such an award. Further, even if Plaintiff had a viable Lanham Act claim against Defendants, I would deny his request for attorney's fees all the same, because they are only to be awarded in exceptional cases. *See* 15 U.S.C. § 1117(a)(3). While the statute does not define what constitutes an "exceptional case," the Fourth Circuit has described such a case as one in which "the defendant's conduct was 'malicious, fraudulent, willful or deliberate in nature.'" *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 370 (4th Cir. 2001) (quoting *Scotch Whisky Ass'n v. Majestic Distilling Co., Inc.*, 958 F.2d 594, 599 (4th Cir. 1991)). I find no evidence that Defendants' conduct fits this bill or amounts to obvious bad faith. Accordingly, for these reasons, I decline to grant Plaintiff attorney's fees.

## C. Injunctive Relief

With respect to injunctive relief, Plaintiff seeks an order permanently enjoining Defendants from using any of his copyrighted materials, mandating the impoundment and destruction of all copies of the Kayhan book, and prohibiting Defendants from making any false or defamatory comments about Plaintiff or his family. As a general matter, the Copyright Act permits a court to grant "temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). When considering a request for permanent injunctive relief, a court should consult traditional principles of equity. *See Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 546–47 (4th Cir. 2007). As outlined by the Supreme Court, a plaintiff seeking permanent injunctive relief must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (citations omitted); *accord Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743, 2756 (2010) (quoting above language). So long as these factors are taken into account, a district court's decision to grant or deny such injunctive relief is committed to its equitable discretion. *eBay*, 547 U.S. at 391.

In the case at hand, Plaintiff has no right to recover statutory damages from Defendants for their use of his copyrighted works in the Kayhan book. Further, Plaintiff has alleged no actual damages. Without an order granting him injunctive relief, then, Plaintiff would be left with no means of protecting himself against Defendants' continued, unauthorized use of his intellectual property. *See, e.g.*, *Swallow Turn Music v. Wilson*, 831 F. Supp. 575, 581 (E.D. Tex. 1993) ("While the issuance of an injunction is in the discretion of the court, courts have

traditionally granted permanent injunctions if liability is established and a continuing threat to a copyright exists.") (citation omitted).  Accordingly, I find that Plaintiff is entitled to an order permanently enjoining Defendants from using his copyrighted materials, which means that Defendants shall immediately cease publication and sale of the Kayhan book so long as it contains excerpts from Plaintiff's historical works.  To be sure, such relief imposes a hardship on Defendants, but it is significantly outweighed by the aforementioned interest in protecting Plaintiff's original works.  Thus, a remedy in equity is clearly warranted, and granting it does not disserve the public interest, because even though a small audience may temporarily be deprived of the ability to purchase the Kayhan book, there is a larger societal interest in limiting the unauthorized use of others' copyrighted works.

      However, I do not find that it is necessary to order the impoundment and destruction of the Kayhan books that have already been sold or otherwise disseminated.  Under the Copyright Act, a court may, as part of a final judgment, order the destruction or other reasonable disposition of all copies of a work found to have been made or used in violation of the copyright owner's exclusive rights.  17 U.S.C. § 503(b).  But in the case at hand, the balance of hardships tilts in favor of denying Plaintiff's request for such relief.  The inclusion of aspects of Plaintiff's historical works on portions of three pages out of the Kayhan book's several hundred pages does not merit the destruction of all copies of a work that was otherwise authored exclusively by Ms. Pirnia after years of her own research and effort.  Moreover, such a remedy would represent a disservice to the public as the myriad histories, ideas, photographs, and other depictions found within the Kayhan book that are not a product of Plaintiff's copyright would be unnecessarily removed from the public sphere.  Accordingly, I will not order that the books be collected and destroyed.

      Finally, Plaintiff somewhat curiously seeks an order permanently enjoining Defendants

from making any false or defamatory comments about him or his family.[9] For a variety of reasons, I must deny this request for relief as well. First, at bottom, this action concerns copyright infringement, not libel or defamation, which, I add, Plaintiff has not even remotely pled sufficient facts to demonstrate. Second, in his amended complaint, Plaintiff only tangentially refers to the defamatory nature of Defendants' book, and the majority of his accusations simply allege what might be termed historical inaccuracies that in no discernable way directly relate to Plaintiff or his family. Third, the allegedly defamatory portions of the book are not the same portions that have been copied from Plaintiff's works. Fourth, such a sweeping, generalized injunction might stand as an impermissible prior restraint on Defendants' free speech rights under the First Amendment to the Constitution. Thus, such a permanent injunction would not only be imprudent but might also represent an affront to the free speech rights enshrined in the First Amendment and to which Defendants are no less entitled, notwithstanding their unauthorized, unattributed use of Plaintiff's copyright. Consequently, I will deny Plaintiff's request for a permanent injunction prohibiting Defendants' from stating falsehoods about him or his family.

## IV. CONCLUSION

For the reasons stated herein, I will grant Plaintiff's motion for default judgment. However, I will limit his relief to a permanent injunction prohibiting Defendants from utilizing in any manner Plaintiff's copyrights and an award of the costs incurred by Plaintiff. An appropriate order accompanies this memorandum opinion.

---

[9] Plaintiff alleges that the Kayhan book contains false statements and historical inaccuracies that are purportedly contrary to the public interest and defamatory to Plaintiff and his family insofar as they inaccurately describe his ancestors. However, these allegations are not tied to any distinct causes of action; rather, they are confusingly included under the heading "Common Law Unfair Competition and Deceptive Trade Practices" in Count V of the amended complaint. As pled, these allegations border perilously close to frivolity.

The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order to Defendants and to all counsel of record.

Entered this __7th__ day of June, 2012.

                                                                                  _____
                                                                                  NORMAN K. MOON
                                                                                  UNITED STATES DISTRICT JUDGE